UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION OF CONSUMER ADVOCATES,<br><br>Plaintiff,<br><br>v.<br><br>GEMINI TRUST COMPANY, LLC,<br><br>Defendant. | Civil Action No. 24-2356 (JDB) |

### MEMORANDUM OPINION

This case began in D.C. Superior Court, and it must return there. The Court will therefore grant the plaintiff's motion to remand.

### Background

This is a consumer protection case, but the plaintiff is not a consumer. Nor is it a group of consumers. Instead, the plaintiff is the National Association of Consumer Advocates, or NACA, a national nonprofit association of consumer protection attorneys and advocates. Compl. [ECF No. 1-2] ¶ 8. NACA brought this lawsuit in D.C. Superior Court alleging that defendant Gemini, a large cryptocurrency platform, operates in violation of federal law. Id. ¶¶ 1–2.

Despite the federal-law basis of the lawsuit, NACA did not need to satisfy normal standing requirements because it entered the D.C. courthouse door through a creature of D.C. law that grants "public interest organization[s]" acting in "the interests of a consumer or a class of consumers" a cause of action in D.C. Superior Court to enforce certain consumer protection laws. See D.C. Code § 28-3905(k)(1)(D). That D.C. law operates without regard to Article III standing. See

1

Animal Legal Def. Fund v. Hormel Foods Corp., 258 A.3d 174, 181–85 (D.C. 2021). But Gemini then removed the case to this Court, see Notice of Removal [ECF No. 1], which, unlike D.C.'s courts, is not free to disregard Article III, see Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). The removal was therefore only proper if, among other things, NACA has Article III standing. Nat'l Consumers League v. General Mills, Inc., 680 F. Supp. 2d 132, 136 (D.D.C. 2010).[1]

NACA now moves this Court to remand the action to D.C. Superior Court. See Pl.'s Mot. to Remand [ECF No. 11] ("Mot."). So the everyday standing dispute flips on its head: NACA, as a plaintiff, assumes the somewhat odd posture of disclaiming its own standing, see Mot. at 7–19; cf. Republican Nat'l Comm. v. N. Carolina State Bd. of Elections, No. 24-2044, 2024 WL 4597030, at *13 n.1 (4th Cir. Oct. 29, 2024) (Diaz, C.J., concurring), while Gemini, the defendant, assumes the burden of insisting that NACA does have standing, see Mizell v. SunTrust Bank, 26 F. Supp. 3d 80, 84 (D.D.C. 2014). Because the Court agrees with NACA that Gemini has not met that burden, it must grant the motion to remand. See Brookens v. Am. Fed'n of Gov't Emps., 315 F. Supp. 3d 561, 570–71 (D.D.C. 2018).

## Analysis

### I. Standing

NACA is an organization, meaning it has two pathways to standing in federal court. See Elec. Priv. Info. Ctr. v. Dep't of Com., 928 F.3d 95, 100 (D.C. Cir. 2019). It could invoke organizational standing to sue on its own behalf. Id. Or it could invoke associational standing to sue on behalf of its members. Id.

---

[1] Standing is not the sole requirement; the Court must have subject matter jurisdiction, which NACA contends is missing because this action does not implicate a federal question. See Pl.'s Mot. to Remand [ECF No. 11] at 19–25. Because it concludes that NACA lacks standing, the Court does not reach this alternative argument.

The parties agree that the second option—associational standing—is the only viable path to satisfying Article III here. See Def.'s Opp'n to Mot. [ECF No. 15] ("Opp'n") at 2; Mot. at 7. And the parties agree that two of the three requirements for assessing associational standing laid out in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977), are met: the interest pursued in the litigation is "germane" to the association's purpose, and the action does not require participation from individuals. See Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin., 724 F.3d 243, 247 (D.C. Cir. 2013); Opp'n at 5; Mot. at 18 n.2.

So the parties spar over the final requirement: that "at least one of [NACA's] members would have standing to sue in his own right." Am. Trucking Ass'ns, 724 F.3d at 247. NACA's actual membership is counterintuitively absent from this discussion, as nobody contends that its formal members—consumer protection lawyers and advocates scattered across the country—would have standing to sue in this case. See Notice of Removal ¶¶ 27, 30. Instead, Gemini attempts to satisfy this requirement by pointing to D.C. residents who use Gemini. Id. ¶ 30. As Gemini would have it, these users are NACA members in effect—if not in name—by virtue of their status as consumers. Id.

In making this argument, Gemini draws on the precept that the membership inquiry is functional, not formal, meaning that absence from formal membership rolls does not automatically preclude membership for associational standing purposes. See, e.g., Hunt, 432 U.S. at 344; Flyers Rts. Educ. Fund, Inc. v. Dep't of Transp., 957 F.3d 1359, 1361 (D.C. Cir. 2020). Instead, an individual or group might enjoy functional membership status despite lacking formal membership status. Flyers Rts., 957 F.3d at 1361. Presented with such an argument—that individuals who are not formally members are nonetheless functionally members—the question for this Court is whether the individuals at issue form a "discrete" group "with a definable set of common interests"

3

that NACA serves, see Ctr. for Sustainable Econ. v. Jewell, 779 F.3d 588, 598 (D.C. Cir. 2015), and who bear the "indicia" of membership the Supreme Court articulated in Hunt, see Flyers Rts., 957 F.3d at 1361; see also AARP v. EEOC, 226 F. Supp. 3d 7, 16 (D.D.C. 2016).  At bottom, the analysis aims to discern whether the organization "actually represents the individual 'members' on whose behalf it purports to bring suit," AARP, 226 F. Supp. 3d at 16, because the essential question underpinning every standing inquiry is whether the suing party has a "personal stake" in the controversy, Baker v. Carr, 369 U.S. 186, 204 (1962).

Applying these principles to the group Gemini identifies as functional NACA members—D.C. residents who use Gemini—the holes in Gemini's argument are evident.  This group is indeed discrete and definable.  But it lacks all the indicia of membership laid out in Hunt: that the purported members "play a role in selecting the organization's leadership, guiding the organization's activities, and financing the organization's activities." AARP, 226 F. Supp. 3d at 16 (discussing Hunt, 432 U.S. at 344–45).  Gemini gestures only toward the second indicator—that D.C. consumers play a role in "guiding the organization's activities"—by highlighting messages on NACA's website promising to serve as the "voice" of consumers nationwide and inviting all consumers to share (with NACA and Congress alike) their stories of wrongful treatment by corporations.  Notice of Removal ¶¶ 30, 34–37.  But a platitude like a claim to serve as a "voice" for consumers falls far short of showing that any particular consumer can actually influence NACA's activities, and the invitation to share stories establishes at most that NACA "work[s] with" consumers "in achieving common goals"—not enough for membership.  Wash. Legal Found. v. Leavitt, 477 F. Supp. 2d 202, 210 (D.D.C. 2007).  In any event, even if generalized calls for storytelling could amount to inviting "guid[ance]" of organizational activities (which is doubtful) there is no indication that D.C. Gemini users provide any such guidance—let alone that they satisfy

4

the other two indicia by contributing in any way to selecting NACA's leadership or to growing its coffers.

None of this is surprising considering NACA's structure. This is a group not of consumers but of lawyers, meaning that consumers are at least one step removed from organizational control. Cf. APPC Servs., Inc. v. Sprint Commc'ns Co., 418 F.3d 1238, 1253 (D.C. Cir. 2005), vacated, 550 U.S. 901 (2007) (Sentelle, J., concurring) (a law firm's clients are not its "members"). Add NACA's national scope and it becomes clear that D.C.-based Gemini users—a tiny fraction of the organization's constituency—cannot realistically "steer the organization's course." Am. Legal Found. v. FCC, 808 F.2d 84, 90 (D.C. Cir. 1987). Their power over NACA's decisions is so diluted as to be nearly nonexistent, and so there is no way to know whether NACA truly represents them. See Fund Democracy, LLC v. SEC, 278 F.3d 21, 26 (D.C. Cir. 2002). NACA, in other words, is not sufficiently "subject to the influence of" D.C. Gemini users to enter the federal courthouse door on their behalf. Flyers Rts., 957 F.3d at 1362.

So Gemini is left fighting fruitlessly against cases where similar associations have been held to lack standing. Most pertinent is American Legal Foundation v. Federal Communications Commission, in which the D.C. Circuit held that a nonprofit media law center purporting "to represent the interests of all members of the public who regularly watch ABC News" didn't have standing. 808 F.2d 84, 88 (1987). The court explained that the law center's "open-ended" constituency, which conceivably encompassed "all who read newspapers, watch television, or listen to the radio," prevented it from being able to serve a "discrete, stable group of persons with a definable set of common interests." Id. at 90. And its "supporters"—the purported members—did not play a role in selecting the center's leadership or guiding or financing its activities. Id.

5

The center's relationship to news viewers therefore lacked the indicia of a membership relationship necessary to grant it associational standing. Id.

Just so here. If the Court adopted Gemini's definition of NACA's membership, the membership would be so open-ended as to sweep in every consumer in the United States. (And who isn't a consumer of something?) Gemini artificially narrows that group to the subset of consumers NACA seeks to represent in this lawsuit, but the fact remains that its analysis would make a NACA member of every person in the country. And, beyond broadly purporting to represent consumer interests and generally inviting consumers to share their stories, NACA does nothing to submit itself to the control of the D.C.-based Gemini users on whose behalf it comes to court—just like the law center in American Legal Foundation.

Gemini counters with cases of its own, but each is readily distinguishable. It relies heavily, for instance, on Securities Industry & Financial Markets Association v. United States Commodity Futures Trading Commission, 67 F. Supp. 3d 373 (D.D.C. 2014), which does nothing more than reinforce the proposition that Article III calls for a functional rather than formal analysis. The court there credited an association's informal members as "functional" members because "the only distinction" between formal and informal members was presence on the association's membership rolls, which the association maintained "only for administrative purposes." Id. at 410–11. In all relevant respects, formal and informal members were identical: informal members "possesse[d] all of the rights and obligations of formal membership," including participating in the association's decision-making processes, attending meetings, and voting. Id. at 411. The same cannot be said of D.C. Gemini users' relationship to NACA.

The most powerful case for Gemini is Flyers Rights Education Fund, Inc. v. United States Department of Transportation, 957 F.3d 1359 (D.C. Cir. 2020), in which the D.C. Circuit permitted

an organization to sue on behalf of its non-member constituency. The case at hand is like that one in some ways: the plaintiff there was also a non-profit organization that advocated on behalf of the purported members but did not grant them formal membership status. Id. at 1361. But three things set the cases apart. First, the organization there was significantly more "subject to the influence" of its purported membership because it had set up numerous channels of communication to allow members "to have direct input" which "guide[d] the organization's activity," and because most of its funding came "directly from its members." Id. at 1362. Second, the members there (airline passengers who signed up to receive information from the organization) were presumably a representative subset of the organization's broader constituency (all airline passengers), whereas the relevant "members" here occupy a small niche within NACA's nationwide constituency of consumers. That puts the purported members' voices here at greater risk of being drowned out by the potentially competing priorities of other factions. And perhaps most importantly, the organization there had no formal members at all, id. at 1361, meaning it had no competing group with a greater claim to steering the organization. Here, the direct influence NACA's attorney-members enjoy over organizational activities threatens to overwhelm the indirect (if any) influence D.C.-based Gemini users might otherwise wield.

In holding that NACA lacks Article III standing to sue on behalf of D.C.-based Gemini users, the Court does not imply that the two groups' interests are not aligned. That is not the question. Courts have found associational standing lacking, for instance, where a magazine "committed to the decriminalization of marijuana" sued on behalf of its readers, many of whom were dependent on marijuana for medical reasons. Gettman v. DEA, 290 F.3d 430, 435 (D.C. Cir. 2002). Same in American Legal Foundation, where three ABC viewers' affidavits affirming that the center "represent[ed]" their "interests" did not grant the center standing. 808 F.2d at 88, 90–

7

91. Instead, the question is whether the individuals whose standing the association seeks to borrow can exert sufficient control over the association to be considered its members. Here, they cannot.

## II.   Jurisdictional Discovery

Gemini attempts to prolong its time in federal court by seeking jurisdictional discovery. See Opp'n at 10–12. But Gemini makes no material jurisdictional allegations that it could prove through discovery and that are based on information not currently available to it. See Urquhart-Bradley v. Mobley, 964 F.3d 36, 48 (D.C. Cir. 2020). It speculates, for instance, that NACA might have formal members who use Gemini, Opp'n at 11, but NACA's formal membership list is public, so discovery on this front wouldn't reveal anything that is not already available.[2] As for NACA's informal "members," it is exceedingly unlikely that discovery "could produce facts that would affect the court's jurisdictional analysis." Toumazou v. Turkish Republic of N. Cyprus, 71 F. Supp. 3d 7, 18 (D.D.C. 2014) (cleaned up). This national association of consumer attorneys is simply too far removed from being meaningfully controlled by D.C.-based Gemini users to enter federal court on their behalf.

## III.   Attorney's Fees and Costs

Although NACA's motion to remand succeeds, NACA goes too far in seeking an order that Gemini pay the attorney's fees and costs NACA incurred as a result of removal to this Court. See Mot. at 25–27. Such an order is appropriate only "where the removing party lacked an objectively reasonable basis for seeking removal" or where "unusual circumstances" warrant fees. Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). Neither is true here. Gemini's argument, while ultimately unmeritorious, is reasonable, especially in a legal realm this Court has called "unspecific," AARP, 226 F. Supp. 3d at 17, and that has produced decisions like Flyers Rights

---

[2] See Find an Attorney, https://www.consumeradvocates.org/findanattorney (last visited November 14, 2024) [https://perma.cc/4QMM-GVT6].

sustaining standing on facts bearing a surface-level similarity to those here, see 957 F.3d at 1361–62.  And while NACA asks for fees to deter companies from exploiting removal to run up costs against nonprofit organizations seeking to hold them accountable, nothing suggests Gemini has engaged in that sort of gamesmanship here.  The parties will bear their own costs.

## Conclusion

For the above reasons, the Court will grant NACA's motion to remand and deny its request for attorney's fees and costs.  A separate order will issue.

/s/
JOHN D. BATES
United States District Judge

Dated: November 18, 2024